**Timothy Dennis PORATH, Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–02–01026–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 27, 2004.

Rehearing Overruled Oct. 14, 2004.

Charles Thomas Flood, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellant was charged with felony possession of child pornography. After the trial court denied, in whole or in part, three pretrial motions, appellant pleaded guilty pursuant to a plea agreement with the State. The trial court found appellant guilty, assessed punishment at seven years' confinement, and granted appellant the right to appeal the denial of the motions. In twelve issues, appellant contends the trial court erred in denying (1) his motion to suppress because (a) the warrant and supporting affidavit were defective, and (b) the officers executing the search warrant acted outside of their jurisdiction; (2) his motion to declare section 43.26 of the Texas Penal Code unconstitutional because the statute is overly broad and ambiguous; and (3) his motion for pretrial determination of admissibility because expert testimony is necessary to establish that the images at issue were actual children. We affirm.

## I. FACTUAL BACKGROUND

Sergeant Scott Schultz, with the Sugar Land Police department, discovered appellant with a fifteen-year old boy in a park located in Fort Bend County on July 19, 2000. Officer Kevin Brownlee was assigned to investigate. Through his investigation, Brownlee learned that appellant had met the child in an Internet chat room. He also learned that some of their conversations had been sexual in nature. After appellant admitted meeting the child on the Internet, Brownlee obtained a search warrant for appellant's residence.

Brownlee and three other detectives conducted the search at appellant's residence. The officers seized a computer, a white box containing ten diskettes, an assortment of videotapes and empty videotape boxes, twenty-five magazines, a gay and lesbian yellow pages directory, a green ice chest, one red golf club cover, one condom, eight computer diskettes, six compact discs, and two cameras.

Nickie Drehel, a computer forensics officer, retrieved evidence from the two computers, diskettes, and compact discs. On the diskettes, Drehel found a large number of photographs, some of which appeared to be child pornography. A forensic graphic artist with the Harris County District Attorney's office testified that the images taken from appellant's computer were actual photographs and not virtual images.

The court denied appellant's motion to find Penal Code section 43.26 unconstitutional, and partially granted and partially denied appellant's motion to suppress evidence seized from appellant's home. The trial court reviewed the pictures extracted from various seized diskettes, admitting those that depicted children under the age of eighteen and suppressing those that were arguably of men older than eighteen. After the court denied appellant's motions, appellant pleaded guilty to the charge of possession of child pornography and obtained permission to appeal the denial of his motions.

## II. Denial of the Motion to Suppress

In ten issues, appellant contends the trial court erred in partially denying his motion to suppress the evidence seized from his apartment.

### A. Standard of Review

 We review a trial court's ruling on a motion to suppress under a bifurcated standard of review by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). The trial court, in determining whether a probable cause affidavit sufficiently supports a search warrant, examines the totality of the circumstances and gives great deference to the magistrate's decision to issue the warrant. *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). The test for determination of probable cause is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236–37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Although the trial court is bound by the four corners of the document, in determining whether probable cause exists to issue a warrant, a magistrate may draw reasonable inferences from the affidavit and must interpret the affidavit in a common sense and realistic manner. *Ramos*, 934 S.W.2d at 362–63; *State v. Duncan*, 72 S.W.3d 803, 805–06 (Tex.App.-Fort Worth 2002, pet. dism'd); *Guerra v. State*, 860 S.W.2d 609, 611 (Tex. App.-Corpus Christi 1993, pet. ref'd) (citing *Bower v. State*, 769 S.W.2d 887, 902 (Tex.Crim.App.1989)). The rationale for reviewing the affidavit in a common sense, rather than a hypertechnical manner, is the preference of the legislature for utilization of the warrant process by the police. *See Janecka v. State*, 739 S.W.2d 813, 823 (Tex.Crim.App.1987); *see also Griese v. State*, 820 S.W.2d 389, 392 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). The allegations in the affidavit are sufficient if they would justify a conclusion that the object of the search is probably on the premises. *Ramos*, 934 S.W.2d at 363. The trial court's determination that an affidavit establishes the existence of probable cause should be given great deference by a reviewing court. *Bower*, 769 S.W.2d at 902 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

### B. Evidentiary Warrant

#### 1. Nature of the Warrant

 In his first issue, appellant contends the search warrant was an evidentiary warrant that did not comply with article 18.01(c) of the Texas Code of Criminal Procedure. A search warrant issued pursuant to article 18.02(10) of the Code of Criminal Procedure allows a search for, and seizure of, "property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a

particular person committed an offense." TEX.CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon Supp.2004). This type of warrant is referred to as an evidentiary warrant. Any evidentiary search warrant issued under article 18.02(10) must be accompanied by an affidavit setting forth sufficient facts to establish probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for and seized constitute evidence of that offense, or evidence that a particular person committed that offense; and (3) the property or items to be searched for or seized are located at or on the particular person, place, or thing to be searched. TEX.CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp.2004).

Here, the search warrant commands a peace officer to search appellant's residence and "seize the property or items requested in [Officer Brownlee's affidavit]." Officer Brownlee, in his affidavit, sought to seize "property or items constituting evidence that [appellant] has committed the offense of Enticing a Child or Indecency with a Child including computers, computer hardware, computer software, computer disks, books, magazines, videotapes, photographs and any reproductions of the above." Accordingly, we conclude the search warrant is an evidentiary warrant. *See Scott v. State*, 868 S.W.2d 430, 432 (Tex.App.-Waco 1994, pet. ref'd).

### 2. Probable Cause

■ Appellant also contends the affidavit in support of the search warrant does not set forth sufficient facts to establish probable cause that the specifically described property or items to be searched for or seized constitute evidence of the offense of indecency with a child or enticing a child.

Officer Brownlee stated in his affidavit that he learned appellant contacted the complainant over the Internet and they utilized the Internet for conversing with and e-mailing each other. The complainant informed him that some of those conversations were sexual in nature. Officer Brownlee also stated that in his experience as a law enforcement officer, persons who entice children over the Internet for sexual purposes retain copies of their correspondence and contacts with these children. Further, he stated that these persons generally make these contacts and correspondence on a personal home computer. Officer Brownlee also stated that such correspondence and other contacts with children are generally located in books, magazines, videotapes, still photographs, computer disks, and hardware and software located in the person's residence.

Considering the affidavit as a whole and the reasonable inferences it supports, we find there was a sufficient basis for the court to conclude that a search of appellant's residence for the property or items listed in the affidavit would tend to show that appellant committed the offense of indecency with a child or enticing a child. *See Dixon v. State*, No. 03–01–00459–CR, 2002 WL 31206210, at *6 (Tex.App.-Austin Oct.3, 2002, pet. ref'd) (not designated for publication). Furthermore, we find sufficient facts were set forth in the affidavit to establish probable cause to believe that the property sought would constitute evidence of indecency with a child or enticing a child.

■ In a sub-part to his first issue and in issues seven, eight, and nine, appellant contends the affidavit does not set forth sufficient facts to establish probable cause that property or items constituting evidence of the offense were located at his residence. Officer Brownlee stated in his affidavit that in his experience as a law enforcement officer, contact for the purpose of enticing children is generally en-

gaged in on home computers. As we have noted, Brownlee's affidavit also contained statements that appellant and the complainant met in an Internet chat room and that some of their conversations were sexual in nature. The affidavit specifically stated that appellant reported he and the complainant met in person on two occasions, one of those meetings took place at appellant's apartment and the other at Highland Park, where appellant was arrested.[1] Considering that the complainant also stated (1) appellant and he had smoked marijuana at the park, (2) kissed, (3) appellant had touched his genitals, and that among the items seized after appellant consented to a search of his vehicle were a white plastic bag containing a vibrator, a container of lubricant, and a partially smoked marijuana cigarette, it is not unreasonable for the magistrate to have concluded that items of the offense of enticing or indecency with a child could be found at appellant's residence where appellant and the complainant had a previous encounter. Furthermore, because appellant and the complainant met in an Internet chat room, it is not unreasonable for the magistrate to have inferred that appellant would use his home computer for the purpose of enticing children. Considering the totality of the circumstances presented by the affidavit, deferring to the reasonable inferences from the facts provided and to the common sense and practical interpretation of the affidavit as understood by those versed in the field of law enforcement, a substantial basis existed for the magistrate's determination that evidence of enticing a child would be found in appellant's residence. *See Duncan,* 72 S.W.3d at 805–06. Appellant's first, seventh, eighth, and ninth issues are overruled.

## C. Appellant's Personal Writings

 In his second and third issues, appellant contends the trial court erred in denying his motion to suppress because the warrant was issued for seizure of appellant's personal writings in violation of article 18.02 of the Texas Code of Criminal Procedure and the First, Fourth, and Fifth Amendments to the United States Constitution. In *Warden v. Hayden,* 387 U.S. 294, 301, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the United States Supreme Court determined that nothing in the language of the Fourth Amendment supported a distinction between a warrant for "mere evidence" of a crime and a warrant for the "instrumentalities or fruits of a crime." In 1977, the Texas Legislature added a "mere evidence" provision to article 18.02 of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon Supp.2004). The personal writings exception was included to protect persons from searches designed to find written evidence by which a person might incriminate himself. *See Reeves v. State,* 969 S.W.2d 471, 483 (Tex.App.-Waco 1998, pet. ref'd), *cert. denied,* 526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999). Although, article 18.02(10) authorizes a search for mere evidence of a crime, it specifically disallows a search for personal writings of the accused. *Id.* "Personal writings" refers to writings such as diaries, memos, and journals, that were not intended by the writer to be published to third parties. *Id.* at 486.

 Appellant, in his motion to suppress, did not identify any personal writings that were seized in this case. A motion to suppress is nothing more than a specialized objection to the admission of evidence. *See Martinez v. State,* 17

---

1. It is not clear from the affidavit whether appellant and the complainant had met on a

prior occasion at the park, or if the occasion at issue was the second time the two had met.

S.W.3d 677, 682–83 (Tex.Crim.App.2000). To preserve error, a request, objection, or motion must state the grounds therefor with sufficient specificity to make the trial court aware of the complaint. Tex.R.App. P. 33.1(a). If the objection made in the trial court differs from the complaint made on appeal, the defendant has failed to preserve error for review. *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.2002). By failing to point to any personal writings that were seized pursuant to the warrant, appellant has failed to preserve error. Appellant's second and third issues are overruled.

### D. Protected Speech

 In his fourth, fifth, and sixth issues, appellant contends the trial court erred in denying his motion to suppress because the warrant sought seizure of protected speech and was a general warrant in violation of the Fourth Amendment to the United States Constitution and article I, sections 9 and 19 of the Texas Constitution. Appellant contends the warrant was impermissibly broad because the affidavit in support of the search warrant sought to seize "computers, computer hardware, computer software, computer disks, books, magazines, videotapes, photographs and any reproductions of the above."

 The Fourth Amendment prohibits issuance of general warrants allowing officials to burrow through a person's possessions looking for any evidence of a crime. *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). A warrant must particularly describe the place to be searched and the person or things to be seized. *Id.; Walthall v. State,* 594 S.W.2d 74, 78 (Tex.Crim. App.1980). In determining whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized. *United States v. Layne,* 43 F.3d 127, 132 (5th Cir.), *cert. denied,* 514 U.S. 1077, 115 S.Ct. 1722, 131 L.Ed.2d 580 (1995). In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized. *Id.*

The warrant here is sufficiently particular to withstand appellant's challenge. The language in the warrant properly limited the executing officers' discretion by informing them what items were to be seized. *See United States v. Kimbrough,* 69 F.3d 723, 727 (5th Cir.1995) (holding that a warrant seeking "tapes, cassettes, cartridges, streaming tape, commercial software and manuals, hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems," and other similar items was particular enough to limit the officer's discretion).

Appellant argues that the warrant in this case is "not dissimilar" from the one held overly broad in *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). To the contrary, the warrant executed in *Stanford* was issued for the recovery of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas[.]" *Id.* at 478–79, 85 S.Ct. 506. The warrant was found unconstitutional because the items to be seized were primarily books and the basis for their seizure was the ideas they contained. *Id.* at 485. In this case, the warrant did not authorize the seizure of literary material because of the ideas contained in the material. The warrant authorized seizure of child pornography and evidence of enticing a child.

Appellant's fourth, fifth, and sixth issues are overruled.

### E. Jurisdiction of Executing Officers

 In his tenth issue, appellant argues the trial court erred in denying his motion to suppress because the officer executing the warrant was outside of his jurisdiction. Relying on *McCain v. State*,[2] appellant claims that because Officer Brownlee, a Sugar Land police officer, executed the warrant in Harris County, the evidence seized is inadmissible.[3] In his appellate brief, appellant states he initially raised the issue of Officer Brownlee's jurisdiction during the January 11, 2002 hearing on his motion and, at that time, the trial court delayed ruling on the motion pending a determination of whether any portion of Sugar Land was also in Harris County. According to appellant, however, "[t]hat question was never answered on the record; [ ], soon after the court referenced the Key Map, the State argued that there were still other grounds upon which Officer Brownlee could have executed the warrant in another county. This response leaves the obvious impression in the record that the question was answered in the negative and that no part of Sugar Land is located in Harris County." Appellant's Brief at 21 (citations omitted). Appellant couches his assertions regarding this issue as follows: "the only evidence in the record is that a Sugar Land Police Department officer executed a search [warrant] outside his jurisdiction." After a review of the record, however, we conclude appellant failed to preserve this issue for our review. *See* TEX.R.APP. P. 33.1(a).

On December 10, 2001, appellant's counsel filed a motion to suppress entitled "Motion to Suppress Any and All Evidence Seized From Defendant's Residence on July 19, 2000."[4] In his motion, appellant did not argue that the evidence seized from his home should be excluded because Officer Brownlee was acting outside of his jurisdiction. However, on January 11, 2002, during the hearing on appellant's motion, his counsel raised the issue for the first time and the trial court entertained the argument. Specifically, the record reveals the following transpired concerning Officer Brownlee's jurisdiction:

> MR. FLOOD (Appellant's counsel): And I also noticed, Your Honor, that the record consists of the affidavit for search warrant, the search warrant and the return, and in review of all those things it does not reveal that there was in fact authorization by Brownlee to execute the search warrant in Harris County, Texas.
>
> COURT: Flush that out. What are you talking about?
>
> * * * *
>
> COURT: Is all of Sugar Land in Fort Bend County?
>
> FLOOD: I don't know the answer to that question, Your Honor, however, the record in the case is—
>
> * * * *
>
> COURT: But just like a City of Houston police officer would be a peace officer within the city limits in Houston, that also includes Fort Bend County and Montgomery County.

---

2. 995 S.W.2d 229 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd, untimely filed).

3. Appellant does not argue the evidence should have been excluded as a violation of Texas law or the Fourth Amendment.

4. The record reflects that appellant's first motion to suppress was filed on March 5, 2001, by his attorney at that time, Candelario Elizondo. This motion did not raise the issue of Officer Brownlee's jurisdiction.

Parts of Houston are in both of those counties.

FLOOD: Right. I am just relying on the record in the motion to suppress....

\* \* \* \*

COURT: The question that I have first is, is any part of Sugar Land in Harris County, Texas? Because if it is, they automatically have jurisdiction in Harris County.

\* \* \* \*

COURT: Well, that's an issue and it's an issue I need to know the answer to.

\* \* \* \*

FLOOD: I don't know either.[5]

Further, the court noted that if an officer from Harris County had accompanied Officer Brownlee, the issue was resolved. Appellant then suggested the trial date be reset due to a scheduling conflict, and noted that, in the meantime, the matter could be settled. The court reset the trial date and the following discussion ensued:

COURT: Yes, for disposition, and I will have a ruling for you, assuming I am going to hear back on something.

MS. CROW (Prosecutor): Judge, the answer to one or two questions. Do you just want to know if the boundaries cross and if there were any Houston Police Department or Harris County deputies.

COURT: No, I need to know what authority, and it can be answered in a couple different ways, if Sugar Land had been running Fort Bend County search warrants in Harris County.

Either they did it because they are peace officers in Harris County based on having some jurisdiction in Harris County or they had Harris County law enforcement with them or neither of the above.

CROW: A written submission, if I send it to you?

FLOOD: Sure.

COURT: If I could get that a couple of days in advance of the 25th....

FLOOD: I am still depending on my other arguments, Your Honor.[6]

At the conclusion of the hearing, the trial court stated it would not rule on appellant's motion without an answer to "the question," that is, the officer's jurisdiction to execute the warrant.

Eight months after the first hearing, on September 19, 2002, another hearing was held on appellant's motions to suppress. At the beginning of the hearing, the court noted that appellant's motion, styled "Pretrial Determination of Admissibility of Certain Evidence Under Rule 901," was to be considered. Appellant's counsel added that his "Motion to Declare Section 43.26 of the Texas Penal Code Unconstitutional" was also still pending and a hearing on both motions could be conducted simultaneously. Notably, however, appellant failed to mention the issue concerning the jurisdiction of Officer Brownlee during the second hearing and failed to raise the issue in either of the motions to be considered. Indeed, at the beginning of the September 19 hearing, appellant's attorney advised the court that he had offered to stipulate

---

5. During the discussion, appellant advised the court that, based on the state of the record, the evidence was that Officer Brownlee was outside of his jurisdiction. The trial court noted that appellant failed to raise the issue in his motion and, therefore, it would let the State respond.

6. On January 25, 2002, an unsigned "Stipulation of Evidence" was filed, stating in part that Brownlee, another Sugar Land Police Department detective, and a Houston Police officer, Sparkman, executed the warrant. Because this document was not signed by appellant's counsel, we do not consider it.

to Officer Brownlee's testimony, and the State was putting him on in order to make sure the record was complete. Pertinent to the issue of his jurisdiction, Officer Brownlee testified that he and three other detectives executed the search warrant.[7] The record does not reflect that appellant ever reasserted or obtained a ruling on his objection to the evidence seized due to Officer Brownlee's alleged lack of jurisdiction. Following this second hearing, the trial court denied appellant's suppression motions.

 It is well established that almost every right, constitutional or statutory, may be waived by a failure to object. *Willeford v. State,* 72 S.W.3d 820, 824–25 (Tex.App.-Fort Worth 2002, pet. ref'd) (citing *Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim.App.1990)). This includes contentions raised in a motion to suppress. *See, e.g., Strauss v. State,* 121 S.W.3d 486, 489–90 (Tex.App.-Amarillo 2003, pet. ref'd) (finding counsel's silence as to the validity of appellant's consent during hearing on motion to suppress waived the issue); *Smith v. State,* 58 S.W.3d 784, 787 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) (holding defendant waived complaint that officer lacked reasonable suspicion where defendant's attorney asked the trial court to delay ruling on his motion to suppress,

but failed to subsequently secure a ruling on his motion or to reassert his objection to the evidence). As noted, a motion to suppress is a specialized objection to the admissibility of evidence. *Moreno v. State,* 124 S.W.3d 339, 343 (Tex.App.-Corpus Christi 2003, no pet.). Therefore, a motion to suppress must meet all of the requirements of an objection, that is, it must be timely and sufficiently specific to inform the trial court of the complaint.[8] *Id.* (citing *Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995)). The trial court must be aware of an objection and given the opportunity to address it. *See* Tex.R.App. P. 33.1(a); *see also DeMoss v. State,* 12 S.W.3d 553, 557 (Tex.App.-San Antonio 1999, pet. ref'd).

In this case, the trial court made no ruling on appellant's objection during the first hearing. When the second hearing was conducted and the specific issues to be addressed were announced, appellant failed to raise any objection to the evidence based upon Officer Brownlee's alleged lack of jurisdiction, or advise the court that the issue was "unresolved," as he now complains. Instead, appellant's counsel stated that he offered to stipulate to any testimony Officer Brownlee might offer.[9]

---

7. The complaint against appellant also states that Brownlee and "other officers" executed the warrant.

8. This requirement has a dual purpose: (1) to inform the trial court of the basis for the objection; and (2) to provide opposing counsel the opportunity to cure the objection or supply other testimony. *Moreno,* 124 S.W.3d at 343.

9. We find appellant's reliance on *McCain* misplaced. In *McCain,* Fort Bend County peace officers obtained evidence as a result of an illegal *warrantless* arrest conducted outside of their jurisdiction. *McCain,* 995 S.W.2d at 233–34. In this case, the evidence objected to was seized by virtue of a valid warrant.

Moreover, in this case, it is unclear from the record that Officer Brownlee was indeed acting outside of his jurisdiction. In fact, the record reflects that appellant's counsel did not know whether any area of Officer Brownlee's jurisdiction fell within Harris County, and did not know whether a Harris County officer had indeed accompanied Officer Brownlee. *See McGee v. State,* 105 S.W.3d 609, 613 (Tex.Crim.App.2003) (noting that an accused seeking to suppress evidence bears the burden of proving the presumption of proper police conduct); *see also State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000) (noting that when there are no written findings, an appellate court is to view evidence in

The record reflects that the parties agreed to resolve the issue of Officer Brownlee's jurisdiction prior to trial and the court indicated it would not rule on appellant's motions without a resolution to the issue. Assuming the parties failed to satisfactorily resolve the matter, appellant bore the burden of bringing that fact to the court's attention and obtaining a ruling on it if he intended to rely on the objection on appeal. *See* TEX.R.APP. P. 33.1(a); *Strauss*, 121 S.W.3d at 490 (finding that appellant's failure to raise an issue during the hearing on his motion to suppress, although raised in his written motion, was waived); *Cf. DeMoss*, 12 S.W.3d at 556 (finding issue raised in previous motion to suppress preserved because reasserted argument in hearing on second motion and previous motion brought forward). Under these circumstances, we find that appellant waived this issue for our review; to conclude otherwise would encourage parties to "lay behind the log," waiting to assert error on appeal that should have been addressed in the trial court. Appellant's tenth issue is overruled.

### III. CONSTITUTIONALITY OF SECTION 43.26 OF THE TEXAS PENAL CODE

 In his eleventh issue, appellant challenges the constitutionality of section 43.26(a) of the Texas Penal Code on the basis that it is overly broad, vague, and violates the First Amendment because it draws no distinction between possession of actual child pornography and child pornography created by digital or computer imaging. Section 43.26(a) provides: "A person commits an offense if: (1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct[.]" TEX. PEN.CODE

ANN. § 43.26(a) (Vernon 2003). When reviewing the constitutionality of a statute, we presume the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting it. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim. App.1978). Appellant bears the burden to show the statute is unconstitutional. *See Ex parte Anderson*, 902 S.W.2d 695, 698 (Tex.App.-Austin 1995, pet. ref'd). The statute must be upheld if a reasonable construction can be ascertained that will render the statute constitutional and carry out the legislative intent. *See Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App.1979).

 In construing whether a law is vague and overbroad, we keep in mind the elementary principle of statutory construction: we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results. *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim.App.), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999). In determining plain meaning, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a); *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex.Crim.App.1996).

In support of his arguments, appellant relies on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). In *Free Speech Coalition*, the United States Supreme Court considered a challenge to the Child Pornography Prevention Act of 1996 ("CPPA"). *Id.* at 239, 122 S.Ct. 1389. The CPPA extended the federal prohibition of child pornography to sexually explicit images that "appear to" depict minors engaging in sexual conduct, but are produced without using any real children.

the light most favorable to the trial court's ruling).

*Id.* Because the statute prohibited both protected and unprotected speech, the Court held that the statute was unconstitutional to the extent it regulated virtual images or images that merely appeared to depict children engaged in sexual conduct. *Id.* at 256, 122 S.Ct. 1389. In so holding, however, the Court also observed, "[t]he freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." *Id.* at 246, 122 S.Ct. 1389.

In Texas, it is an offense to knowingly or intentionally possess "visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct" if the person "knows that the material depicts the child" engaging in sexual conduct. TEX. PEN.CODE ANN. § 43.26(a) (Vernon 2003). Unlike the federal statute, the plain language of the Texas statute indicates that it prohibits only possession of material that depicts an actual child, not material that merely "appears" to depict a child. *Id.*

Because section 43.26(a) only prohibits pornography depicting actual children, the statute is not vague or overbroad. *Webb v. State,* 109 S.W.3d 580, 583 (Tex.App.-Fort Worth 2003, no pet.). Further, because pornography produced with actual children is not a category of speech protected by the First Amendment, the statute's prohibition of these materials does not violate the First Amendment. *Id.; see also Free Speech Coalition,* 535 U.S. at 246, 122 S.Ct. 1389. Appellant's eleventh issue is overruled.

## IV. EXPERT TESTIMONY

In his twelfth issue, appellant contends the trial court abused its discretion in denying his "Motion for Pretrial Determination of Admissibility." Appellant contends the State is required to present expert testimony that the images seized from appellant were actual images of children and not computer-generated images of "virtual children." He argues that testimony regarding whether the photographs were of actual children, rather than "morphed" or virtual images, is technical or specialized evidence which must be based on reliable methodology.

The State presented two witnesses at the pretrial hearing who testified that the images were not computer-generated and were of actual children. Nickie Drehel, a forensic computer analyst for the Houston Police Department, testified to the method utilized to retrieve the images from appellant's computer. He did not testify as to whether the images were "morphed" or altered. Juan De Anda, a graphic artist for the Harris County District Attorney's office, testified that the images were of actual children and not of "virtual children." He testified that computers were not yet capable of producing realistic images of human beings. He further testified that he knew of no other expert in his field who used this reasoning.

The admission of expert testimony is governed by Texas Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 702. The trial court's task in assessing admissibility under Rule 702 is to determine whether the expert testimony is sufficiently reliable and relevant to help the jury in reaching accurate results. *Kel-*

*ly v. State*, 824 S.W.2d 568, 573 (Tex.Crim. App.1992).

In *Kelly*, the Texas Court of Criminal Appeals set forth a three-prong reliability test and identified seven non-exclusive factors for courts to consider in assessing reliability of scientific evidence.[10] *Id.* Evidence derived from a scientific theory, to be considered reliable, must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. *Id.* All three criteria must be proved by the proponent of the evidence before the evidence may be admitted. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex.Crim.App.2000).

The first question to be determined is whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results. *Morales v. State*, 32 S.W.3d 862, 865 (Tex.Crim.App.2000). Appellant again relies on *Ashcroft v. Free Speech Coalition*, 535 U.S. at 234, 122 S.Ct. 1389 for the proposition that expert testimony is necessary to show whether the pornographic images are of actual children. The Supreme Court in *Free Speech Coalition*, however, did not establish a broad requirement that the government must present expert testimony to establish that the unlawful image depicts a real child. *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir.2004). In *Free Speech Coalition*, the government claimed that, under then current technology, virtual images could be created that are indistinguishable from real images. 535 U.S. at 254, 122 S.Ct. 1389. The Court found this hypothesis "somewhat implausible." *Id.* The Court reasoned, "[i]f virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." *Id.*

In the wake of *Free Speech Coalition*, several courts have determined that the presentation of the pictures alone constitutes sufficient evidence for determining that an actual child is depicted in the pornographic image. *See Slanina*, 359 F.3d at 357 ("[T]he Government was not required to present any additional evidence or expert testimony to meet its burden of proof to show that the image downloaded by [the defendant] depicted real children, and not virtual children."); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir.2003) ("Juries are still capable of distinguishing between real and virtual images."); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir.2003) (upholding jury's conclusion that pictures depicted actual children "where the images themselves were the only evidence the government presented on the subject"); *United States v. Hall*, 312 F.3d 1250, 1260 (11th Cir.2002) (concluding, after review of pictures, that "no reasonable jury could have found that the images were virtual children created by computer technology as opposed to ac-

---

**10.** Factors that could affect a trial court's determination of reliability include, but are not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the experts testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the persons who applied the technique on the occasion in question. *Kelly*, 824 S.W.2d at 573.

tual children"); *United States v. Fuller,* 77 Fed. Appx. 371, 380 (6th Cir.2003) (unpublished disposition) (citing *Deaton* for proposition that "jury's conclusion that real children were depicted may be upheld even when the only evidence offered was the images themselves"); *see also People v. Normand,* 345 Ill.App.3d 736, 281 Ill. Dec. 478, 803 N.E.2d 1099, 1103 (2004) (holding that under Illinois child pornography statute "the trier of fact may make a determination as to how an image was produced from the image itself"); *Commonwealth v. Simone,* 2003 WL 22994238, at *22–23 (Va. Cir. Ct.Oct.10, 2003) (unpublished disposition) (holding that under Virginia child pornography statute "the Commonwealth may seek to rely upon the images themselves without the necessity for expert opinion" to prove that pictures depict images of actual children); *but see United States v. Hilton,* 363 F.3d 58, 64 (1st Cir.(Me.), 2004) ("[G]overnment must introduce relevant evidence *in addition* to the images to prove the children are real.") (emphasis in original) (not yet published).

Thus, the trial court is capable of reviewing the evidence, without the benefit of expert testimony, to determine whether the State met its burden to show the images depicted real children as opposed to "virtual children." Accordingly, appellant's twelfth issue is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.