Affirmed and Memorandum Opinion filed August 24, 2006








Affirmed and Memorandum Opinion filed August 24, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00637-CR

____________

 

ROGER MAGDANY REYES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 1004701

 



 

M E M O R A N D U M   O P I N I O N

Appellant Roger Magdany Reyes was charged with possession
with intent to deliver a controlled substance, namely cocaine.  After the
denial of appellant=s motion to suppress, he entered a plea of
guilty.  Following a presentence investigation, the trial court assessed
punishment at twenty-five years= incarceration in the Texas Department of
Criminal JusticeCInstitutional Division.  In five issues,
appellant contends the warrantless search of the vehicle he was driving was
improper, and he was improperly induced into making an incriminating
statement.  We affirm.








I.  Factual and Procedural
Background

On October 21, 2004, Officer Floyd Winkler of the Houston
Police Department, was conducting a narcotics investigation, which led him to a
parking lot on Highway 6 at Interstate 10.  Winkler testified he had
information that a large narcotics transaction would take place in the parking
lot.  His information included the fact that a Ford Explorer would be involved
in the transaction.  At approximately 1:00 in the afternoon, a Ford Explorer
entered the parking lot.  Fifteen minutes later, a Volkswagen driven by
appellant and his co-defendant, Israel Herrera, entered the parking lot and
drove up to the Ford.  A woman exited the Ford and gave appellant and Herrera
an empty suitcase.  Appellant placed the open suitcase in the trunk of the
Volkswagen and began to place Abrick-like@ objects in the
suitcase.  After the suitcase was filled, both cars left the parking lot.

Before the transaction, Winkler had requested that a
Department of Public Safety Trooper be available to make a traffic stop. 
Winkler followed the Volkswagen in his unmarked vehicle until he observed the
driver of the vehicle change lanes in advance of a hard left turn without
signaling that he would be changing lanes.  According to Winkler, the lane
change almost caused an accident.  Winkler then radioed the trooper to make a
traffic stop.  Trooper C. Franden stopped the vehicle, asked appellant and
Herrera several questions, and obtained consent to search the vehicle.  Trooper
Franden found a suitcase full of cocaine in the trunk of the vehicle.  After
the cocaine was discovered, Winkler arrived on the scene, arrested appellant
and Herrera, and advised them of their rights.  Appellant waived his rights and
made a statement to Winkler. 

II.  Issues presented








In his first three issues, appellant argues the trial court
abused its discretion in denying his motion to suppress because the warrantless
search was invalid.  He argues there was no evidence he violated traffic laws,
the detention exceeded the scope of the investigation, and the consent to search
was not valid.  In his fourth and fifth issues, appellant argues the trial
court erred in denying his motion to suppress his statement because he was
improperly induced into making an incriminating statement. 

III.  Analysis

A.  Standard of Review

In a motion to suppress hearing, the trial court is the
sole trier of fact and the sole judge of the credibility of the witnesses and
the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). 
The court is free to believe or disbelieve all or any part of a witness=s testimony, even
if the testimony is uncontroverted.  Id.  Thus, a trial court=s ruling on a
motion to suppress is reviewed under a bifurcated standard of review, giving
almost total deference to the trial court=s determination of
historical facts that the record supports and reviewing de novo the
court=s application of
search and seizure law to those facts.  Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).  We afford
almost total deference to the trial court=s rulings on mixed
questions of law and fact when resolution of those questions turns on an
evaluation of credibility and demeanor.  Ross, 32 S.W.3d at 856.  When, as in this case,
the trial court fails to file findings of fact, we view the evidence in the
light most favorable to the trial court=s ruling and
assume that the trial court implicitly made findings of fact that support its
ruling, if those implied findings of fact are supported by the record.  See
id. at 855.  Because the trial judge was free to believe any or all
evidence presented and to make a determination of historical facts supported by
the record after evaluating the credibility and demeanor of the witnesses at
the hearing, we give the trial court=s decision
deference.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997) (en banc).

 

 








B.  Traffic Stop

A traffic stop is a Fourth Amendment seizure resembling an
investigative detention.  See State v. Daly, 35 S.W.3d 237, 241 (Tex.
App.CAustin 2000, no
pet.).  An officer may stop and briefly detain someone for investigative
purposes if the officer has a reasonable suspicion that the individual may be
involved in criminal activity, even if the officer lacks evidence rising to the
level of probable cause.  James v. State, 102 S.W.3d 162, 170 (Tex. App.CFort Worth 2003,
pet. ref=d).  Reasonable
suspicion exists if the officer has specific articulable facts that, when
combined with rational inferences from those facts, would lead him to
reasonably suspect that an individual has engaged in, or is, or soon will be
engaged in illegal conduct.  Id.  The reasonableness of the investigative
detention must be evaluated in objective terms by examining the totality of the
circumstances.  Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App.
2004).

1. 
Legality of the Traffic Stop

In his first issue, appellant contends Officer Winkler did
not provide articulable facts sufficient to justify the traffic stop.  An
officer is permitted to make a lawful temporary investigative detention of an
individual if the officer has (1)  reasonable suspicion to believe that an
individual is violating the law; (2) some suggestion to connect the detainee
with the unusual activity; and (3) some indication that the activity is related
to a crime.  Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)
(en banc).  If an officer has a reasonable basis for suspecting that a traffic
violation was in progress or has occurred, the officer may legally initiate a
traffic stop.  Powell v. State, 5 S.W.3d 369, 376 (Tex. App.CTexarkana 1999, pet. ref=d).  Where there
has been some cooperation between police officers, the cumulative information
known to the cooperating officers at the time of the stop is to be considered
in determining whether reasonable suspicion exists.  Hoag v. State, 728
S.W.2d 375, 380 (Tex. Crim. App. 1987) (en banc). 








Here, the cumulative information known to the officers at
the time of the traffic stop was that appellant and Herrera drove into a
parking lot, where it was reported a drug transaction would take place. 
Appellant placed Abrick-like@ objects into a
suitcase in the trunk of the vehicle.  After following the vehicle, Winkler
observed the vehicle change lanes in advance of a hard left turn without
signaling that he would be changing lanes.  According to Winkler, the lane
change almost caused an accident.  Appellant argues that articulable facts did
not show he committed a traffic violation and points to the videotape from
Trooper Franden=s vehicle, which shows appellant using a
turn signal as he prepared to make a left turn.  Franden does not dispute that
he did not observe a traffic violation.  In fact, he was acting on information
given to him by Winkler, who observed the traffic violation.  But, the record
shows that the traffic violation Winkler observed was the failure to signal a
lane change, not the failure to signal in advance of  a left turn.  Further, Winkler
had reasonable suspicion that criminal activity was afoot because he observed
the narcotics transaction in the parking lot. Considering the totality of the
circumstances, the trial court had sufficient evidence to support its implied
finding that the traffic stop was valid.  Appellant=s first issue is
overruled.

2. 
Scope of the Detention








In his second issue, appellant contends Trooper Franden
exceeded the scope of the initial traffic stop because he did not investigate
the traffic violation, but used the stop as a pretext to obtain consent to
search.  Initially, we address the State=s contention that
appellant waived error with regard to the scope of the detention.  Citing Porath
v. State, 148 S.W.3d 402 (Tex. App.CHouston [14th
Dist.] 2004, no pet.), the State argues that by failing to raise the issue of
the scope of the detention at the hearing, appellant waived this issue.  See
148 S.W.3d at 414.  In Porath, this court held that Porath waived an
issue on his motion to suppress that was not raised in his written motion, but
only addressed at a hearing on the motion to suppress.  Id.  In this
case, the State concedes that appellant raised the issue of the scope of the
detention in his written motion, but claims he failed to raise it at the
hearing.  We disagree.  At the hearing on the motion to suppress,  the issue of
the scope of detention was heard, in that during Trooper Franden=s
cross-examination, he was questioned about the continued detention of appellant
and Herrera.  Therefore, appellant preserved error for review.

To be reasonable, a traffic stop must be temporary and last
no longer than is necessary to effectuate the purpose of the stop.  Davis,
947 S.W.2d at 245.  Once the reason for the stop has been satisfied, the stop
may not be used as a Afishing expedition for unrelated criminal
activity.@  Id. at 243 (quoting Ohio v. Robinette,
519 U.S. 33, 42 (1996) (Ginsburg, J., concurring)).  The propriety of the
length of the detention is judged by assessing whether the police diligently
pursued a means of investigation that was likely to quickly dispel or confirm
their suspicions.  United States v. Sharpe, 470 U.S. 675, 686, 105 S.
Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985).  Any continued detention must be based
on articulable facts which, when taken together with rational inferences from
those facts, would warrant a person of reasonable caution in the belief that a
continued detention was justified, i.e., the detainee was or would soon be
engaged in criminal activity.  See Davis, 947 S.W.2d at 244B45.  Appellant
argues it was unreasonable for Franden to continue to detain him without
investigating the original traffic stop.








Here, Trooper Franden=s further
detention of appellant was reasonable under the circumstances.  Franden
testified that he asked appellant and Herrera about the purpose of their trip,
who the car belonged to, and their destination.  Franden testified that
appellant appeared Anervous@ and his Ahands were
shaking.@  Franden also
testified that appellant and Herrera told different stories about their
destination and purpose of their trip.  In support of his argument that the
continued detention was unreasonable, appellant relies on Herrera v. State,
80 S.W.3d 283 (Tex. App.CTexarkana 2002, pet. ref=d).  Appellant
argues that here, just as in Herrera, the stop was based on a pretext of
a traffic violation that was not investigated and for which he was not cited.  See
Herrera, 80 S.W.3d at 287.  Herrera, however, is factually
distinguishable from this case.  Herrera was stopped for a traffic violation
and the detention was lengthened while officers waited for a Spanish-speaking
officer to arrive.  Id.  When the Spanish-speaking officer appeared, he
did not question Herrera about the traffic violation, but immediately sought
his consent to search the vehicle.  Id.  The Texarkana Court of Appeals
found the officer did not diligently pursue a means of investigation that was
likely to quickly dispel or confirm their suspicions.  Id. at 288.  The
court, therefore, held the trial court erred in failing to suppress the
evidence.  Id. at 289.

In contrast, here, Trooper Franden properly investigated
the traffic stop, asking routine questions about the car appellant was driving,
and the purpose of his trip.  The videotape reveals that Franden encountered
difficulty in obtaining answers to these routine questions.  Franden asked
appellant several times where he was going, but appellant did not directly
answer the question.  When Franden asked for  Herrera=s driver=s license, 
Herrera said it had been suspended.  Trooper Franden=s line of
questioning was related to matters within the scope of the traffic stop. 
Further, Franden had reasonable suspicion to believe appellant was engaged in
criminal activity because of the suspected narcotics transaction that had taken
place.  Therefore, the continued detention was reasonable.  Appellant=s second issue is
overruled.

C.  Consent to Search








In his third issue, appellant contends his consent to
search was not voluntary.  Under the Fourth and Fourteenth Amendments, a search
conducted without a warrant issued upon probable cause is per se unreasonable
subject only to a few specifically established and well‑delineated
exceptions.  Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct.
2041, 2043, 36 L. Ed. 2d 854 (1973).  One of the specifically established
exceptions to the requirements of both a warrant and probable cause is a search
that is conducted pursuant to consent, if the consent is voluntary.  Id.
at 219‑23.  The continued detention and request to search a detainee=s car following a
traffic stop is reasonable when consent is given.  See Ohio v. Robinette,
519 U.S. 33, 38-40, 117 S. Ct. 417, 420B21, 136 L. Ed. 2d
347 (1996); Simpson v. State, 29 S.W.3d 324, 328 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 

The validity of a consent to search is a question of fact
to be determined from the surrounding circumstances.  Robinette, 519
U.S. at 40, 117 S. Ct. at 421; Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002) (en banc).  The consent must not be coerced by explicit
or implicit means, by implied threat, or covert force.  Schneckloth, 412
U.S. at 228, 93 S. Ct. 2048; see also Allridge v. State, 850 S.W.2d 471,
493 (Tex. Crim. App. 1991) (en banc).  In Texas, the State is required to prove
the voluntariness of consent by clear and convincing evidence based on the
totality of the circumstances.  See Reasor v. State, 12 S.W.3d 813, 818
(Tex. Crim. App. 2000). 

Appellant argues his consent was involuntarily for two
reasons.  First, appellant argues he did not give consent because he told the
trooper the car did not belong to him.  As the driver of the car, appellant had
authority to consent to a search of the vehicle.  See United States v.
Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993, 39 L. Ed. 2d 242 (1974);
Maxwell, 73 S.W.3d at 281.  A third-party=s consent to a
search derives from the common authority over the property or other sufficient
relationship.  Matlock, 415 U.S. at 171, 94 S. Ct. at 993.  It is this
mutual use that leads to a finding that a third party has the right to permit
the search of the relevant property.  Maxwell, 73 S.W.3d at 281B82.  

When Trooper Franden questioned appellant, appellant had
been driving the car.  Appellant told Franden that Herrera owned the car, but
could not drive it because his license had been suspended.  As the driver,
appellant had immediate possession and control of the vehicle and could consent
to a search.  See id.  Although appellant denied ownership of the
vehicle, such denial did not reflect appellant=s intent not to
give consent.








Appellant next argues that he did not give consent, but
merely acquiesed to the trooper=s authority.  For consent to be valid, the
State must show by clear and convincing evidence that the consent was not Acoerced, by
explicit or implicit means, by implied threat or covert force.@  Carmouche,
10 S.W.3d at 331 (quoting Schneckloth, 412 U.S. at 228).  Consent is not
established by Ashowing no more than acquiescence to a
claim of lawful authority.@  Id. (quoting Bumper v. North
Carolina, 391 U.S. 543, 548 (1968)).  In determining whether consent was
voluntary, courts consider various factors, including whether the consenting
person was in custody, whether he or she was arrested at gunpoint, whether he
or she had the option of refusing consent, the constitutional advice given to
the accused, the length of detention, the repetitiveness of the questioning,
and the use of physical punishment.  See Flores v. State, 172 S.W.3d
742, 749 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  The
validity of a consent to search is a question of fact to be determined from all
the circumstances.  Robinette, 519 U.S. at 40, 117 S. Ct. at 421.  

In this case, appellant was not in custody, and was not
arrested at gunpoint.  The videotape of the traffic stop reveals the detention
was not unnecessarily lengthy, nor was physical punishment used.  As to
repetitiveness of the questioning, the videotape shows the following colloquy
between appellant and Trooper Franden:

Q.:  You have a problem if I search
your car?

A.:  I don=t care.

Q.:  You don=t care if I search
it?

A.:  Right, I meanB 

Q.:  Can I search your car?

A.:  Yeah, if you want to.








Trooper Franden then asked appellant for the keys, which
Franden used to open the trunk of the car.  There is no evidence that Trooper
Franden claimed or asserted any authority to search the vehicle.  Instead, the
evidence shows that Trooper Franden asked appellant if he could search the car,
and appellant replied that he could.  Therefore, we find no basis to support
appellant=s contention that he merely acquiesced to the officer=s claim of
authority.  The exchange between appellant and Trooper Franden could reasonably
be understood to authorize the officer to search the vehicle.  Appellant=s third issue is
overruled.

 

D.  Confession

In his fourth and fifth issues, appellant contends the
trial court erred in denying his motion to suppress his custodial statement
because it was involuntary.  Specifically, appellant argues the officer induced
him to make the statement by telling appellant if he told the Atruth,@ Officer Winkler
would Ahelp@ appellant by
talking to the district attorney.  Appellant argues this promise induced his
involuntary confession.

Article 38.21 requires a statement to have been Afreely and
voluntarily made without compulsion or persuasion.@  Tex.Code Crim. Proc. Ann. art. 38.21
(Vernon 2005).  In determining the question of voluntariness, a court should
consider the totality of circumstances under which the statement was obtained. Creager
v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) (en banc). 
Involuntary confessions offend due process only when they flow from the
improper conduct of law enforcement officials.  Colorado v. Connelly,
479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).  To determine
whether the circumstances render an accused=s statement
involuntary, we ultimately must determine whether his will was Aoverborne@ by police
coercion.  Creager, 952 S.W.2d at 856.  We make this determination based
on the totality of the circumstances.  Gomes v. State, 9 S.W.3d 373, 377
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d). 








Before a promise will render a confession inadmissible, the
promise must be shown to have induced the confession.  Muniz v. State,
851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (en banc).  In order to induce a
confession, the promise must be (1) of some benefit to the defendant, (2)
positive, (3) made or sanctioned by someone in authority, and (4) of such an
influential nature that it would likely influence a defendant to speak
untruthfully.  Creager, 952 S.W.2d at 856.  An improper inducement must
be of an exceptional character before it will invalidate an otherwise voluntary
confession.  Espinosa v. State, 899 S.W.2d 359, 364 (Tex. App.CHouston [14th
Dist] 1995, pet. ref=d).  General, non‑specific offers to
help a defendant are unlikely to elicit a false statement by a suspect, and
will not render a confession invalid.  Id.  Furthermore, general
statements about how a confession might result in more lenient treatment will
not invalidate the confession.  Id.

After Officer Winkler placed appellant and Herrera under
arrest, he questioned both men and recorded their statements.  When Officer
Winkler questioned appellant, he made the following statement:

If you want me to help you or if you want help, you=ve got to be honest with me because
I can=t tell a district attorney that you=re honest with me, that you need
help, you want help, when I know you=re lying to me because if you lie to me now, I can=t trust it.  If you=re helping yourself out, you=re not going to lie about something
else.

 

Appellant
later admitted he knew there was cocaine in the suitcase, but that the cocaine
belonged to Herrera. 








Officer Winkler=s promises of Ahelp,@ or the promise
that he would tell the district attorney that appellant was honest, were not of
such an influential nature that they would have caused appellant to speak
untruthfully.  In Masterson v. State, 155 S.W.3d 167 (Tex. Crim. App.
2005), the Court of Criminal Appeals addressed a similar situation.  In that
case, the officer told Masterson that if drugs belonged to him and he would
admit that, the admission would be Apassed along.@  Id. at
170.  The Court of Criminal Appeals held that the officer=s statements did
not reflect a promise sufficient to cause Masterson to speak untruthfully.  Id. 
Similarly, in this case, Officer Winkler=s vague statements
support the implied finding that no positive promise was made to induce
appellant to speak untruthfully.  Appellant=s fourth and fifth
issues are overruled.

IV.  Conclusion

We hold the trial court did not abuse its discretion in
overruling appellant=s motion to suppress and affirm the trial
court=s judgment. 

 

 

 

 

/s/        Eva M. Guzman

Justice

 

 

 

Judgment rendered and Opinion filed
August 24, 2006.

Panel consists of Chief Justice
Hedges and Justices Yates and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).