Affirmed and Substitute Opinion filed August 18, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00069-CR

___________________

 

RON ARRON THOMAS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On
Appeal from the County Criminal Court at Law No. 15

Harris County,
Texas



Trial Court Cause No. 1614262

 



 

 

SUBSTITUTE OPINION ON REHEARING

            We issued our original opinion in this case on May 17, 2011. 
Thereafter, appellant, Ron Arron Thomas, filed a motion for rehearing and a
motion for en banc reconsideration.  We overrule appellant’s motion for
rehearing, withdraw our previous opinion, vacate our previous judgment, and
issue this substitute opinion and a new judgment.  Appellant’s motion for en
banc reconsideration is denied as moot.

             Appellant was convicted of reckless cruelty to an animal and
sentenced to one year in jail, probated.  In two issues, appellant contends the
evidence is factually insufficient to support the verdict and the trial court
erred by denying his motion for new trial.  We affirm.  

I.   Background

            On May 28, 2009,
the Houston Society for Prevention of Cruelty to Animals (“SPCA”) received
information that a dog was strangling in appellant’s backyard.  SPCA
investigator Trischa Price and Houston Police Department Officer Christine Kendrick
arrived at appellant’s house.  After determining appellant was not home, they
were allowed entry into a neighbor’s backyard.  From that position, Officer
Kendrick and Price viewed into appellant’s backyard and observed a dog, later
identified as dog A07731362, tangled in its leash and in distress.  Acting
under the “emergency doctrine,” Officer Kendrick and Price entered appellant’s
backyard and freed dog A07731362.

While in appellant’s backyard, Officer Kendrick and
Price observed several other dogs that appeared to be malnourished, on
illegally short leashes, suffering hair loss, living in a poor environment, and
lacking food or drinkable water.  Officer Kendrick left and obtained a seizure
warrant directing officers to seize all dogs in appellant’s backyard.  When
Officer Kendrick returned, she affixed the warrant to the front door of
appellant’s house.  Officers and SPCA investigators then proceeded to seize the
dogs.  SPCA investigators videotaped and took several photographs of the
scene.  During the seizure, two dogs escaped through a hole in appellant’s
fence.  Officers located and seized one of the escaped dogs, but the other dog evaded
seizure.  The next day, officers returned to appellant’s house and seized dog
A07733331—apparently the same dog that had evaded seizure the previous day.

The seized
dogs were transported to SPCA facilities and examined by veterinarian Dr. Roberta
Westbrook.  On June 3, 2009, the trial court conducted a civil hearing to
determine whether the dogs had been cruelly treated.  Appellant did not attend
the hearing.  The court concluded the dogs had been cruelly treated and awarded
SPCA ownership of the dogs.

            In three separate informations, the State charged appellant
with reckless cruelty to animals by confining dog A07731362 in a cruel manner and
by failing unreasonably to provide proper nutrition or veterinary care to dog
A07733331 and dog A07731353.  See Tex. Penal Code Ann. § 42.092(b)(3),
(5) (West Supp. 2009).   Appellant pleaded “not guilty” to each charge.  The
jury acquitted appellant of the charges related to dog A07731362 and dog A07731353
but convicted him of the charges related to dog A07733331.  Appellant filed a
motion for new trial in which he contended the evidence is insufficient to
support the verdict and defense counsel provided ineffective assistance.  The
trial court denied the motion following an evidentiary hearing.

II.   Factual Sufficiency

            In his first
issue, appellant contends the evidence is factually insufficient to support his
conviction of cruelty to dog A07733331.  

A.   Applicable
Law and Standard of Review

A person commits cruelty to a nonlivestock animal if he, among other acts
and omissions, recklessly “fails unreasonably to provide necessary food, water,
care, or shelter for an animal in [his] custody.”  Id. § 42.092(b)(3).[1]  Necessary food,
water, care, or shelter includes that required to maintain the animal in a
state of good health.  Id. § 42.092(a)(7).     

A person acts
recklessly, or is reckless, with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  The risk must be of such a nature and degree that its
disregard constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from the
actor’s standpoint.    

Tex. Penal Code Ann. § 6.03(c) (West 2003).  Recklessness is generally proved by circumstantial
evidence.  See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App.
[Panel Op.] 1978).

While this appeal was pending, five judges on the Texas Court of Criminal
Appeals held that only one standard should be employed to evaluate whether the
evidence is sufficient to support a criminal conviction beyond a reasonable
doubt: legal sufficiency.  See Brooks v. State, 323 S.W.3d 893, 894–95
(Tex. Crim. App. 2010) (plurality op.); id. at 926 (Cochran, J.,
concurring).  Accordingly, we review appellant’s challenge to factual
sufficiency of the evidence under the legal-sufficiency
standard.  See Pomier v. State, 326 S.W.3d 373, 378 (Tex. App.—Houston
[14th Dist.] 2010, no pet.) (applying a single standard of review required by Brooks);
see also Caddell v. State, 123 S.W.3d 722, 726–27 (Tex. App.—Houston [14th
Dist.] 2003, pet. ref’d) (explaining that this court is bound to follow its own
precedent).

When reviewing sufficiency of
evidence, we view all of the evidence in the light most favorable to the
verdict to determine whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Brooks, 323 S.W.3d at 899 (plurality op.).  We
may not sit as a thirteenth juror and substitute our judgment for that of the
fact finder by reevaluating the weight and credibility of the evidence.  Id.
at 899, 901; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999);
see also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)
(expressing jury may choose to believe or disbelieve any portion of testimony).
 We defer to the fact finder’s resolution of conflicting evidence unless the
resolution is not rational.  See Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

            In his brief, appellant
expressly concedes the evidence is sufficient to support his conviction under
the legal-sufficiency standard.  Therefore, in light of the Court of Criminal
Appeals’s determination that challenges to factual sufficiency must be reviewed
under the legal-sufficiency standard, appellant has conceded the evidence is
factually sufficient.  Nevertheless, in the interest of justice, we will
determine whether the evidence is factually sufficient to support the verdict
under the legal-sufficiency standard.  

B.   Analysis

            Appellant first
argues the evidence is insufficient to support the jury’s finding that he
recklessly failed to provide proper nutrition to dog A07733331.  Dr. Westbrook
testified that none of the dogs seized from appellant appeared to have received
proper nutrition.  She explained that a dog’s nutrition level may be examined
by determining its body condition scoring (“BCS”) score.  Under BCS, “there is
usually a scale from 1 to 9 . . . .  [1] is the most emaciated of animals, 9 is
usually an obese animal.  And we like animals to be at a 5, that is ideal.” 
Dr. Westbrook determined dog A07733331 had a BCS score of two, meaning it was “absolutely”
not in good condition.[2] 
The videotape and photographs, when viewed in conjunction with Dr. Westbrook’s
findings, also support the jury’s finding that appellant did not provide proper
nutrition.  There was no food in appellant’s backyard at the time of the
seizure except a few dog biscuits.  Further, water bowls in the backyard
contained filthy and undrinkable water.  

We recognize that appellant testified he regularly
provided food and water to his dogs and had fed them on the morning of May 28,
2009.  However, the physical condition of dog A07733331 contradicts this
testimony, and we must defer to the jury’s resolution of conflicting evidence. 
See Jackson, 443 U.S. at 326.  A reasonable jury could conclude that appellant,
as the admitted caretaker of the dogs, was aware of, but consciously
disregarded, a substantial and unjustifiable risk that he failed to provide
proper nutrition to dog A07733331, and that such risk constituted a gross
deviation from the standard of care which an ordinary person would have exercised
under all the circumstances as viewed from appellant’s standpoint.  Therefore,
the evidence is sufficient under the legal-sufficiency standard to support a
finding beyond a reasonable doubt that appellant recklessly failed to provide proper
nutrition to dog A07733331.

            Appellant also
argues that the evidence is insufficient to support the jury’s finding that he
recklessly failed to provide proper veterinary care to dog A07733331.  Dr.
Westbrook testified that none of the dogs had received proper veterinary care. 
She explained that dog A07733331 had a severe flea infestation, heartworms, and
intestinal parasites.  Dr. Westbrook attributed bloody discharge found in dog
A07733331’s transport crate to the intestinal parasites.[3]  Appellant
testified he provided flea, heartworm, and parasite medication to his dogs and
never observed any of the dogs vomit, bleed, or have diarrhea.  Nevertheless,
we must defer to the jury’s decision to disbelieve this testimony relative to
dog A07733331.  Id.  Additionally, appellant admitted that the dogs had never
received rabies vaccinations.  In light of the dog’s deplorable living
conditions, including filthy, stagnant water with visible mosquito larvae, and
the emaciated and parasite-infested condition of several of the dogs, including
dog A07733331, the evidence is sufficient under the legal-sufficiency standard
to support a finding beyond a reasonable doubt that appellant recklessly failed
to provide veterinary care to dog A07733331.

            Finally,
appellant contends the evidence is insufficient to support his conviction for
reckless cruelty to dog A07733331 because the jury acquitted him of the same
charges relative to dog A07731353, which was in worse physical condition than
dog A07733331.  However, assuming these verdicts were inconsistent, inconsistent verdicts in prosecutions
based on the same evidence do not require a reversal on the ground of legal insufficiency.  See Jackson v. State, 3 S.W.3d
58, 61 (Tex. App.—Dallas 1999, no pet.).  Inconsistent verdicts do not
necessarily imply that the jury convicted the defendant on insufficient
evidence, but may simply stem from the jury’s desire to be lenient or to
execute its own brand of executive clemency.  Moranza v. State, 913
S.W.2d 718, 724 (Tex. App.—Waco 1995, pet. ref’d).  Accordingly, we will
not consider this contention.  We overrule appellant’s first issue.

III.   Motion for New Trial

            In his second
issue, appellant argues the trial court erred by denying his motion for new
trial based on jury misconduct and ineffective assistance of counsel.[4] 

A.   Jury Misconduct

First, appellant contends he was entitled to a new
trial because the jury decided its verdict by lot.  “The defendant must be
granted a new trial . . . when the verdict has been decided by lot or in any
manner other than a fair expression of the jurors’ opinion.”  Tex. R. App. P.
21.3(c).  To demonstrate jury misconduct, a defendant must show that (1) the misconduct
occurred and (2) the misconduct resulted in harm to the movant.  Cyr v.
State, 308 S.W.3d 19, 31 (Tex. App.—San Antonio 2009, no pet.).  A
trial court’s denial of a defendant’s motion for new trial due to jury
misconduct is reviewed for abuse of discretion.  See Ford v. State, 129
S.W.3d 541, 547 (Tex. App.—Dallas 2003, pet. ref’d).    

Appellant argues the record
clearly indicates that the jury improperly arrived at its verdict by compromise
because he was convicted of the charges regarding dog A07733331 but acquitted
of identical charges regarding dog A07731353 despite the fact that the physical
condition of dog A07731353 was worse than that of dog A07733331.  Appellant
notes that both his trial counsel and the prosecutor testified they believed
the jury arrived at these verdicts through compromise.  According to appellant,
these circumstances were necessarily sufficient to prove a compromise verdict
because he was unable to present testimony from the actual jurors concerning what occurred during deliberations. 
See Tex. R. Evid. 606(b) (providing that, generally, “a juror may not testify as to any matter or statement
occurring during the jury’s deliberations”);
see also Hicks v. State, 15 S.W.3d 626, 630 (Tex. App.—Houston
[14th Dist.] 2000, no pet.) (“By generally prohibiting jurors from testifying
as to matters and statements occurring during deliberations, rule 606(b)
unquestionably makes proving jury misconduct in criminal trials more difficult
than it was under prior rules.”).  We
disagree.  As noted above, seemingly inconsistent verdicts may stem from the
jury’s desire to be lenient, which would
favor appellant.  See Moranza, 913 S.W.2d at 724.  Accordingly,
notwithstanding defense counsel’s and the prosecutor’s speculations that a
compromise verdict occurred, the trial court did not err by denying a new trial
on this ground.

B.   Assistance of Counsel

Next, appellant contends his counsel was ineffective
in several respects.  In reviewing ineffective-assistance claims, we apply a
two-pronged test.  See Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005) (citing Strickland
v. Washington, 466 U.S. 668, 687 (1984)).  The defendant must prove by a
preponderance of the evidence that (1) counsel’s representation was deficient
because it fell below the standard of prevailing professional norms and (2)
there is a reasonable probability that, but for counsel’s deficiency, the
result would have been different.  Id. (citing Strickland,
466 U.S. at 687).  “Reasonable probability” is a “probability sufficient to
undermine confidence in the outcome,” meaning “counsel’s errors were so serious
as to deprive the defendant of a fair trial, a trial whose result is
reliable.”  Smith v. State, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009)
(quoting Strickland, 466 U.S. at 687).  We
consider the totality of the representation and the particular circumstances of
each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).  We begin with the strong presumption that counsel’s actions and
decisions were reasonably professional and motivated by sound trial strategy.  Stults
v. State, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref’d).  To overcome the presumption, the “allegation of ineffectiveness must
be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness.”  Thompson, 9 S.W.3d at 814 (quoting McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). 

1.   Failure to Quash the Information 

Appellant first argues that counsel provided
ineffective representation by failing to file a motion to quash the
information.  The pertinent information contained the following allegation:
“[Appellant] did then and there unlawfully, recklessly fail unreasonably to
provide necessary food, water, care and shelter for an animal in [his] custody
to-wit: a DOG IDENTIFIED BY A07733331 by FAILING TO PROVIDE PROPER NUTRITION OR
VETERINARY CARE[.]”  Appellant contends the State did not allege the acts
constituting his recklessness with the required specificity.  See Tex.
Code Crim. Proc. Ann. art. 21.15 (West 2009) (mandating that “recklessness” be
alleged with “reasonable certainty”).

Assuming without deciding that recklessness was not
sufficiently alleged in the information, we do not agree counsel acted
deficiently by failing to file a motion to quash.  Counsel testified he discussed
the allegations with the prosecutor on “[a]t least two occasions,” reviewed the
SPCA and veterinary reports, and believed he “underst[ood] what the charge
meant when it said lack of nutrition or veterinary care.”  Thus, appellant did
not prove that counsel lacked an opportunity to prepare a defense. 
Additionally, no evidence or argument was presented indicating the State would
have been prevented from amending the pleading had a motion to suppress been
filed.  See Tex. Code Crim. Proc. Ann. art. 28.10 (West 2006) (allowing
amendment of information); see also Keller v. State, 125 S.W.3d 600,
607–08 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d) (“Appellant has not
established that he would have prevailed on a motion to dismiss, given that the
indictment contained all the elements of the offense . . . and could have been
amended to correct the pleading error.”).  Appellant argues the State’s case
would have been narrowed and more difficult had the State been forced to allege
recklessness with more specificity.  This contention is not necessarily correct
because in amending the information, the State likely would have merely added
the facts supporting dog A07733331’s severe condition for which appellant was
ultimately convicted.  Accordingly, appellant has not established that counsel
was deficient by failing to file a motion to quash.       

2.   Failure to Identify Dog Prior to Trial

Appellant argues counsel provided ineffective representation because he
did not know which dog was dog A07733331 prior to trial.  Appellant contends
counsel’s testimony during the motion for new trial hearing conclusively
established that he was uncertain whether dog A07733331 was the dog seized on
May 29 rather than one of the dogs seized on May 28.  We disagree.  Counsel testified
that he was “pretty sure” dog A07733331 was the dog seized on May 29.  Further,
counsel was not asked and did not state whether he was familiar with dog A07733331
prior to trial; counsel understandably may not have remembered the facts
pertaining to each dog because the hearing on appellant’s motion for new trial
occurred two-and-a-half months after trial.  Relative to his pre-trial preparation,
counsel testified that he understood the facts, reviewed the SPCA and
veterinary reports and photographs, and discussed dog A07733331 with appellant
during a meeting at the prosecutor’s office.  The prosecutor also testified
that she discussed dog A07733331 with appellant and defense counsel during the
meeting.  We recognize that appellant testified his counsel was unfamiliar with
the facts of the case on the day before trial.  However, this testimony merely
raised a factual dispute that the trial court implicitly resolved against
appellant.  See Shanklin v.
State, 190 S.W.3d 154,
161 (Tex. App.—Houston [1st Dist.] 2005), pet. dism’d, improvidently
granted, 211 S.W.3d 315 (Tex. Crim. App. 2007).  Accordingly, appellant has not established that
counsel failed to identify dog A07733331 before trial.              

            3.  
Failure to File Motion to Suppress

            Appellant
next argues that counsel provided deficient representation by failing to file a
motion to suppress all evidence related to dog A07733331’s seizure, including
veterinary records.  To establish counsel
was ineffective for failing to file a motion to suppress, appellant first must
show that such motion would have been granted.  Jackson v. State, 973
S.W.2d 954, 957 (Tex. Crim. App. 1998).   

First, appellant argues officers seized his dogs pursuant to a search
warrant for “mere evidence” issued by a justice of the peace under article 18.02(10)
of the Texas Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art.
18.02(10) (West 2005).  This issue presents a
question of statutory construction.

Under the canons of statutory construction, we must
construe a statute according to its plain language.  Thompson
v. State, 236 S.W.3d 787, 792 (Tex. Crim. App. 2007).  In determining the
plain meaning of the language of a statute, “[w]ords and
phrases shall be read in context and construed according to the rules of
grammar and common usage.”  Tex. Gov’t Code Ann. § 311.011(a) (West 2005); Dowthitt
v. State, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996).  If the language of
the statute is unambiguous, we may
not resort to extratextual factors in interpreting the statute.  Thompson,
236 S.W.3d at 792.  

Article 18.02(10) of the Code of Criminal Procedure authorizes search
warrants for “mere evidence” of a crime.  Tex. Code Crim. Proc. Ann.
art. 18.02(10); see also Porath v.
State, 148 S.W.3d 402, 409 (Tex.
App.—Houston [14th Dist.] 2004, no pet.) (referring to article 18.02(10) as the
“mere evidence” provision).  A search
warrant for mere evidence may be issued only by certain judicial officials, not
including justices of the peace.  Tex. Code Crim. Proc. Ann. art.
18.01(c) (West 2009).   

A subsequent
search warrant may be issued pursuant to Subdivision (10) of Article 18.02 of
this code to search the same person, place, or thing subjected to a prior
search under Subdivision (10) of Article 18.02 of this code only if the
subsequent search warrant is issued by a judge of a district court, a court of
appeals, the court of criminal appeals, or the supreme court.

Id. art. 18.01(d) (West Supp. 2009).  

Relying on these provisions, appellant
contends dog A07733331 was illegally seized because the police were required to
obtain a new search warrant from a court other than a justice court before searching
appellant’s house on May 29.  At the hearing on appellant’s motion for new
trial, defense counsel admitted that in light of 18.01(d), he would file a
motion to suppress if he could “do this all over again.”      .      

We conclude article 18.01(d) is not applicable in this situation.  On May
28, 2009, the justice of the peace issued a “Warrant for Seizure of Animal”
whereby officers were commanded to seize dogs located at appellant’s property. 
The warrant was clearly issued pursuant to section 821.022 of the Health &
Safety Code, which authorizes justices of the peace to issue warrants for the
seizure of cruelly treated animals.  Tex.
Health & Safety Code Ann. § 821.022(a) (West 2010).  Therefore, the
requirement for a subsequent search warrant under article 18.01(d) did not
apply.[5]

Next, appellant argues that the warrant did not provide the officers
authority to return to his house and seize dog A07733331 on May 29 because the officers returned the warrant to
the justice of the peace on May 28.  Assuming without deciding that officers
may no longer execute an animal-seizure warrant once it has been returned to
the issuing magistrate, we conclude appellant has not proven by a preponderance
of the evidence that the trial court would have granted suppression based on
this issue.  See Jackson, 973 S.W.2d at
957; Hollis v. State, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no
pet.).

The record does not affirmatively demonstrate that the warrant was
actually returned on May 28.  Admittedly, the warrant contains a return section
on which type-written language was added indicating that the warrant was
executed, and the dogs removed, on May 28, 2009.  However, a signature line in
the return section is blank, no court file stamp appears on the return, and the
executing officer did not testify that he returned the warrant on May 28.  The
type-written language and lack of a signature supports an inference the return
section was completed prior to execution of the warrant in anticipation that
all of the dogs would be seized on May 28.  The officers could have initially
executed the warrant on May 28, continued execution of the warrant on May 29 by
returning and seizing dog A07733331, then returned the warrant to the justice
of the peace.  See State v. Powell, 306 S.W.3d 761, 700 n.16 (Tex. Crim.
App. 2010) (concluding officers’ search which uncovered contraband was a
continuation of the lawful search they conducted the prior day pursuant to a
search warrant).  Accordingly, we hold appellant has not established that trial
counsel was deficient for failing to seek suppression based on the warrant
being returned on May 28.  

            4.  
Failure to Argue there were Dog Biscuits in Backyard 

            Appellant
next argues counsel was ineffective for failing to argue that the video depicts
dog biscuits in appellants’ backyard.  We agree with the trial court’s
statement that counsel was not ineffective for failing to make this argument
because “[t]he jury can view the video and see things for themselves without
attorneys pointing out every piece of evidence.”  Furthermore, even assuming
counsel’s representation was deficient because of his failure to mention the
biscuits, we cannot conclude that, but for this deficiency, there is a
reasonable probability the result would have been different.  It is highly
unlikely the jury would have believed dog A07733331’s
emaciated and parasite-infested condition stemmed from something other than
appellant’s recklessness because there were a few dog biscuits in the backyard. 
Appellant has not established that counsel was
deficient by failing to argue appellant provided dog biscuits.

            5.   Failure to Argue
Videotape Depicted Dog as Energetic

Appellant next argues that counsel was ineffective for failing to argue
that the videotape depicts the dog as energetic.  Again, we agree with the
trial court’s statement that “[t]he jury can view the video and see things for
themselves without attorneys pointing out every piece of evidence.” 
Furthermore, any exculpatory inference raised by the dog’s energy level was weakened
by Dr. Westbrook’s testimony that “dogs can go a long time without food, and
they can do fairly well.  They can still be, you know, active and alert, but be
in poor body condition.”  Appellant has not established that counsel was
deficient by failing to argue dog A07733331 was energetic and active.            

6.   Failure to Present Evidence Regarding the Dog’s Menstruation

Appellant argues counsel was ineffective because he should have elicited
evidence that the bloody discharge from dog A07733331 could have been due to
the dog’s menstrual cycle.  Before trial, the prosecutor discussed with
appellant and defense counsel the possibility the blood may have been caused by
the dog’s menstrual cycle.  It is undisputed that dog A07733331 had not been
spayed at the time it was seized.  Dr. Westbrook testified that “a lot” of
bloody discharge came from dog A07733331’s “gastrointestinal tract, from the
rectum,” meaning the dog was “suffering from a severe condition” possibly
because it was infected with “two types of intestinal parasites that can both
lead to bloody diarrhea.”  Defense counsel did not question Dr. Westbrook
concerning whether the bloody discharge could have been caused by the dog’s
menstrual cycle.  According to appellant, counsel’s failure to raise an issue
regarding menstruation guaranteed the jury would find that the bloody discharge
resulted from appellant’s failure to care for dog A07733331.  Appellant argues
this finding likely caused the jury to convict him relative to dog A07733331
because the presence of bloody discharge was the primary factor differentiating
dog A07733331’s condition from dog A0773135’s condition.   

We disagree that these circumstances established ineffective assistance
of counsel.  There was no evidence Dr. Westbrook would have agreed that
the discharge could have been caused by the dog’s menstrual cycle; the fact
that the prosecutor suggested the possibility did not prove a veterinary expert
would have agreed.  Additionally, there was some evidence that could have
caused the jury to consider whether dog
A07733331’s discharge was caused by menstruation.  Appellant’s friend, Angela Nelson,
testified her dog (which was in appellant’s custody and in poor physical health
at the time of the seizures) had occasional bloody discharge which she believed
was due to the dog’s menstrual cycle.  Accordingly, appellant has not established that counsel was deficient by failing to
question Dr. Westbrook on the cause of dog A07733331’s discharge.

7.   Failure to Present Evidence Regarding the Dog’s Behavior Change

In his final ineffective-assistance contention, appellant argues counsel
was ineffective because he should have presented evidence regarding a change in
dog A07733331’s behavior.  At the hearing on appellant’s motion for new trial,
Nelson testified the dog was uncharacteristically lethargic on the evening of
March 28, 2010.  In fact, Nelson thought the dog might have been tranquilized. 
Nevertheless, appellant does not explain why this evidence would have aided his
defense.  Thus, he has not established that counsel was deficient by failing to
introduce this evidence.

C.   Interests of Justice

            Lastly, appellant
contends “[t]he interests of justice demand a new trial in this case.”  He argues
that “the jury’s inexplicable decision to convict [him] of cruelly [treating]
Dog A07733331 while acquitting him of the same allegation concerning Dog
A07731353 despite substantially more compelling evidence in that case, [in
conjunction with defense counsel’s shortcomings,] compels a new trial in the
interests of justice.”  For the foregoing reasons, we disagree.  We overrule
appellant’s second issue.  

We affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.

Publish — Tex. R. App. P.
47.2(b).

 









[1] There are several
exceptions to the application of the cruelty to nonlivestock animals, see
Tex. Penal Code Ann. § 42.092 (f), none of which are applicable in this case.





[2] Appellant notes Dr.
Westbrook agreed that another veterinarian might have given dog A07733331 a BCS
score of three or possibly four.  This testimony did not necessarily affect the
probative value of Dr. Westbrook’s BCS score, particularly because she
testified she is especially adept at scoring dogs on the BCS scale.





[3] Appellant notes that Dr.
Westbrook testified that fleas and intestinal parasites were common in
untreated outdoor dogs.  Such testimony does not necessarily negate Dr.
Westbrook’s professional opinion that dog A07733331 had not received proper
veterinary care.  





[4] Appellant also contends
in this section that he was entitled to a new trial because the evidence is insufficient
to support the verdict.  For the reasons stated above, the evidence is
sufficient under the legal-sufficiency standard.





[5] In a civil case, this
court previously analogized the situation in which an animal is seized without
a warrant to the situation in which evidence is seized without a search warrant
issued under article 18.02(10).  See Pine v. State, 889
S.W.2d 625, 631 (Tex. App.—Houston [14th Dist.] 1994, writ dism’d
w.o.j.).  However, Pine is not applicable in the present case.  We make
no determination regarding whether any portion of chapter 18 of the Code of
Criminal Procedure is applicable to an animal-seizure warrant issued under
section 821.022.